UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN CHOYCE,<br><br>    Plaintiff,<br><br>v.<br><br>M. OLIVERIA, et al.,<br><br>    Defendants. | No. 2:19-cv-1216 TLN DB P<br><br><br><br>ORDER |

    Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

    Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

    Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## I. Screening Requirement

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

At all times relevant to this action, plaintiff was a state inmate housed at California State Prison in Sacramento, California ("CSP-Sac"). He names as defendants Appeals Coordinator

CCII M. Oliveria; Correctional Counselor ("CC") II S. Pulley; CCI R. Celesian; CCII D. Patterson; and CSP-Corcoran Chief Deputy Warden Jane Doe. Plaintiff names the defendants in their official and personal capacities, and he seeks damages and declaratory and injunctive relief.

Plaintiff's allegations can be fairly summarized as follows:

Plaintiff is a transgender inmate and a member of the Mental Health Services Delivery System in the Enhanced Outpatient Program and the Department of State Hospital Level of Care.

At CSP-Sac, defendant Pulley was assigned to be plaintiff's CCII with authority over plaintiff's Strategic Offender Management System ("SOMS"), Electronic Records Management System ("ERMS"), and C-File.

On an unspecified date, plaintiff informed CCII Pulley of his safety concerns and need to have his Sensitive Needs Yard ("SNY") status reinstated "due to his sexual orientation, and known desire to transition to a female." In response, CCII Pulley said, "I'm not here to protect homosexuals" and "If you have SNY needs I'll advocate for you but that doesn't mean, I approve of your lifestyle."

Plaintiff then alleges that at some point—it is not clear if this occurred during this conversation or later—he and Pulley had an "altercation" in which plaintiff "threatened" this defendant; there are no further details regarding this incident. After this "altercation," plaintiff was informed by a staff member that his commitment offense included rape, even though his real commitment offense was only for carjacking. Plaintiff claims that CCII Pulley added rape in retaliation for the altercation and to discriminate against plaintiff for being transgender.

On October 1, 2015, plaintiff appeared at the CSP-Sac Institutional Classification Committee ("ICC"), in which Sgt. Stratton was assigned as plaintiff's Staff Assistant, CCII Pulley was the Recorder, and CSP-Sac Chief Deputy Warden ("CDW") Eldridge was the Chairperson. At this ICC hearing, plaintiff asked Sgt. Stratton to have CDW Eldridge review his Confidential Folder, which was in CCII Pulley's possession, and to have him reinstate the SNY status. To this, CCII Pulley said, "You have nothing to worry about."

////
////

3

Before plaintiff could correct the falsified rape commitment offense, he was transferred to California Health Care Facility ("CHCF") in Stockton, California for mental health care. He was then transferred to California State Prison in Corcoran, California ("CSP-Cor").

Upon arrival at CSP-Cor, plaintiff was interviewed by CCII Paterson with CCI Celesian appointed as his Staff Assistant. When plaintiff told CCII Patterson about CCII Pulley's retaliatory and discriminatory conduct, CCII Patterson responded, "I'll never believe a faggot over one of my colleagues." CCII Patterson then abruptly ended the interview.

On December 29, 2016, plaintiff appeared before the CSP-Cor ICC, at which CCII Patterson was the recorder and CDW Jane Doe served as the Chairperson. At this ICC hearing, plaintiff attempted to clarify that his commitment offense did not include rape, that he believed it was improperly added to his filed by CCII Pulley, and that he worried for his safety. CCII Patterson became "hostile" at this point and said, "You still have a penis, [expletive], so protect yourself like a man should…."

On December 29, 2016, plaintiff submitted a CDCR Form 22 complaining that CCII Pulley and CCII Patterson falsified documents in relation to his commitment offense. A staff member reviewed the form and determined that the commitment offense indeed needed to be corrected. Accordingly, on February 6, 2017, CCII Patterson held a Classification Review of plaintiff's case factors and the "R" suffix (to represent "rape") was removed. However, it remained in plaintiff's SOMS, ERMS, and Confidential Folder. Plaintiff's allegations suggest that he immediately complained to CCII Patterson about this and sought to immediately appeal the Classification Review's decision but was unable to do so without assistance because his TABE score is so low (00.7). To this, CCII Patterson responded, "You'll figure it out…."

On March 13, 2017, plaintiff filed an inmate grievance regarding the December 29, 2016, Classification Review hearing with the assistance of another inmate. Defendant Oliveria returned the appeal as untimely. On April 11, 2017, plaintiff filed another inmate grievance with the assistance of another inmate. Again, Oliveria rejected the form, stating to plaintiff, "Are you retarded or just stupid, I told you to clarify your issue. … Your 602 is rejected and not because your [*sic*] wrong but because you didn't follow my instructions."

4

In May 2017, plaintiff was transferred to General Population where "the shot caller of the yard had one of his associates run a paper check on Plaintiff, and the associate allegedly informed the shot caller that Plaintiff was in prison for RAPE." Plaintiff was also informed by a "Christian Mac Rep" that plaintiff's health and safety was in danger; plaintiff replied that he was not a rapist and that the threat would soon pass. However, because of the false classification offense of rape, plaintiff was severely beaten by three inmates and placed in the Administrative Segregation Unit for safety concerns.

In July 2017, plaintiff filed yet another inmate grievance regarding the falsified documents in his records that have now resulted in him being severely beaten. Oliveria handed this grievance back to him unanswered, stating, "You need to stop crying over spilled milk."

Based on these allegations, plaintiff brings the following claims: (1) an access to courts claim against Oliveria, (2) an Eighth Amendment deliberate indifference claim against Pulley, Patterson, Jane Doe, and Celesian, and (3) a Fourteenth Amendment due process claim against Pulley.

## IV. Discussion

### A. First Amendment Access to Court

The First Amendment guarantees the right to "petition the Government for a redress of grievances." U.S. Const. amend. I. "It is well settled that the right to access to the courts is subsumed within the right to petition." Laws v. City of Seattle, 2009 WL 3836122, at *3 (W.D. Wash. Nov. 12, 2009) (citing Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd., 461 U.S. 731, 741 (1983)). This right of access to courts is also guaranteed to individuals who are detained pursuant to civil commitment. Cornett v. Donovan, 51 F.3d 894, 897 (9th Cir. 1995), as amended (May 23, 1995) (citing King v. Atiyeh, 814 F.2d 565, 568 n. 2 (9th Cir. 1987)). A prisoner or detainee's right to litigate without active interference under the First Amendment applies to all "claims that have a reasonable basis in law or fact." Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (citations and internal quotations omitted).

The Supreme Court has held that a prisoner or detainee must demonstrate that he lost access to a past, present, or potential opportunity for litigation, and the actions of prison officials

actively led to the denial of access. See Christopher v. Harbury, 536 U.S. 403, 414-15 (2002). Though this right does not require officials to actively assist with a prisoner's filings, it prohibits officials from erecting barriers which are intended to "impede the right of access of incarcerated persons." Id. at 1102-03 (citations and internal quotations omitted). A detainee arguing his right to access the courts has been violated must also demonstrate an actual injury. Lewis, 518 U.S. at 349; Madrid v. Gomez, 190 F.3d 990, 996 (9th Cir. 1999). To show actual injury, plaintiff must demonstrate that he suffered "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348. Mere negligence is not sufficient to establish an unconstitutional denial of access to the courts. See Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989).

Plaintiff brings an access to court claim against defendant Oliveria related to this defendant's processing of his inmate grievances. However, plaintiff has not alleged an actual injury. Furthermore, the right of access to court is limited to interference with direct criminal appeals, habeas petitions, and civil rights actions, not inmate grievances. See Lewis v. Casey, 518 U.S. 343, 354 (1996).

To the extent plaintiff asserts that he was unable to exhaust administrative remedies, which denies him access to court, plaintiff is informed that he need only exhaust "available" administrative remedies before bringing an action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997(e)(a).

**B. Fourteenth Amendment Due Process**

    **a. Processing of Inmate Grievance**

Insofar as plaintiff's allegations implicate his due process rights as they relate to the way plaintiff's inmate grievance was processed, plaintiff is informed that prisoners do not have "a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Prison officials are not required under federal law to process inmate grievances in any specific way. Plaintiff's claim that Oliveria denied or refused to process his grievances does not state a cognizable claim for a violation of his due process rights because there is no right to a particular

grievance process or response. See, e.g., Towner v. Knowles, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff failed to state claims that would indicate a deprivation of his federal rights after defendant allegedly screened out his inmate appeals without any basis); Williams v. Cate, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

### b. Fabricating Classification Offense

In his third claim, plaintiff contends that Pulley violated plaintiff's rights by fabricating a classification offense. In general, prison inmates do not have a protected liberty interest in freedom from alleged classification errors where such errors do not cause the inmates to be subjected to "atypical and significant hardship...in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The same principle applies to claimed due process violations arising from allegedly false information in prison documents, such as medical records. See Hines v. Gomez, 108 F.3d 265, 268-69 (9th Cir. 1997); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (Prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," so long as they are "not...deprived of a protected liberty interest without due process of law."). Thus, the mere creation of a falsified document does not, standing alone, violate plaintiff's due process rights.

### C. Eighth Amendment Deliberate Indifference

Next, plaintiff's allegations against Pulley, Patterson, Jane Doe, and Celesian are presented as an Eighth Amendment "deliberate indifference" claim. Liberally construing the pleading, however, it appears plaintiff is accusing these defendants of failing to protect him from a risk of serious injury related to the falsified commitment offense that was included and/or allowed to remain in his Central File. In a "failure-to-protect" Eighth Amendment violation claim, an inmate must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was deliberately indifferent to inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of

an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. See Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040. A plaintiff may state a claim for deliberate indifference against a supervisor based on the supervisor's knowledge of, and acquiescence in, unconstitutional conduct by his or her subordinates. Starr, 652 F.3d at 1207. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Id.

Based on plaintiff's allegations in the complaint, plaintiff states a cognizable failure to protect claim against defendant CCII Pulley, who is accused of adding a falsified document in plaintiff's personnel file labeling him a rapist, presumably aware of the safety ramifications related to the charge. See Johnson v. Robinson, 2015 WL 882021, at *14 (E.D. Cal. Mar. 2, 2015), report and recommendation adopted, 2015 WL 3603942 (E.D. Cal. June 5, 2015), aff'd, 692 Fed. Appx. 371 (9th Cir. 2017) ("the seriousness of the 'sex offender' label in prison is tangible enough to support, in certain circumstances, a claim that a defendant used the dangerousness implications of that label or ignored them in deliberate indifference to an inmate's safety."); see also Knight v. Runnels, 2007 WL 2390139, at *14 (E.D. Cal. Aug. 20, 2007) (finding deliberate indifference claim stated where plaintiff "allege[d] that this defendant put a 'R-suffix' in his file knowing that, if plaintiff was put in general population, he would be stabbed"). Again, liberally construing the pleading, plaintiff has also stated a claim against CCII Patterson, who failed to remove the label from the entirety of plaintiff's file even after plaintiff complained following the Classification Review hearing.

Turning now to plaintiff's claims against Jane Doe and Celesian, the Court finds that plaintiff's allegations are tenuous to proceed as to them. He alleges that these defendants acted in concert with and conspired to violate plaintiff's constitution rights. To state a claim for conspiracy under section 1983, plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th

Cir. 2001). "Conspiracy" is not a stand-alone claim. A conspiracy "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation. <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 935 (9th Cir. 2012) (citations omitted). Plaintiff fails to state a cognizable claim for conspiracy. Plaintiff fails to demonstrate that any individual defendant conspired, how such defendant conspired, and how the conspiracy led to a deprivation of his constitutional rights. <u>See</u> <u>Harris v. Roderick</u>, 126 F.3d 1189, 1196 (9th Cir. 1997). Because the crux of plaintiff's conspiracy claim is mere speculation, the Court finds that he fails to state a claim against defendants Jane Doe and Celesian.

### D. Fourteenth Amendment Equal Protection

Finally, while not asserted as a cause of action, plaintiff's allegations include comments attributed to both CCII Pulley and CCII Patterson suggesting that the motivating factor behind their conduct was plaintiff's transgender status.

The Equal Protection Clause of the Fourteenth Amendment requires every individual to be judged individually and receive equal justice under the law. <u>Plyler v. Doe</u>, 457 U.S. 202, 216 n.14 (1982). This has not, however, been held to mean that all individuals must receive equal treatment. The Supreme Court's tiered framework analyzes equal protection claims based on the type of classification at issue and the requisite level of justification. If a group of individuals is considered a suspect or quasi-suspect class, then the court applies either strict or intermediate scrutiny. Strict scrutiny has been historically reserved for fundamental rights and classifications based on race and national origin. <u>See</u> <u>Loving v. Virginia</u>, 388 U.S. 1, 18 (1967). Intermediate scrutiny, on the other hand, has been applied to sex-based classifications. <u>See</u> <u>United States v. Virginia</u>, 518 U.S. 515, 524 (1996).

The Supreme Court employs a four-factor test to determine whether a class qualifies as suspect or quasi-suspect thus meriting heightened scrutiny. Heightened scrutiny is appropriate when the class being discriminated against: (1) has been "historically subjected to discrimination," (2) has a defining characteristic bearing no "relation to ability to perform or contribute to society," (3) has "obvious, immutable, or distinguishing characteristics," and (4) is a

"minority or is politically powerless." <u>Windsor v. United States</u>, 699 F.3d 169, 181 (2d Cir. 2012) (listing the factors), aff'd on other grounds, 570 U.S. 744 (2013).

Once the court determines heightened scrutiny should apply, the plaintiff must show the defendants acted with an intent or purpose to discriminate against her based on her membership in a suspect or quasi-suspect class. <u>See</u> <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998). As to transgender individuals, the Supreme Court has not yet determined the appropriate classification and level of scrutiny to apply. The Ninth Circuit first addressed the issue in 1977 in <u>Holloway v. Arthur Anderson & Co.</u>, 566 F.2d 659 (9th Cir. 1977). In <u>Holloway</u>, the Ninth Circuit refused to apply heightened scrutiny to transgender discrimination under the Equal Protection Clause because it did not consider transgenders to be a discrete and insular minority possessing immutable characteristics. <u>See</u> 566 F.2d at 663-64. Since 1977, <u>Holloway</u> has been abandoned in many jurisdictions, including the Ninth Circuit. As recognized by the Ninth Circuit, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), overruled <u>Holloway</u>. <u>See</u> <u>Schwenk v. Hartford</u>, 204 F.3d 1187, 1201 (9th Cir. 2000). Other cases have said <u>Holloway</u> is "no longer good law." <u>Norsworthy v. Beard</u>, 87 F. Supp. 3d 1104, 1118 (N.D. Cal. 2015). Courts have increasing applied the four <u>Windsor</u> factors to find transgender discrimination merits heightened scrutiny. At this stage of this action, this Court agrees.

Plaintiff alleges that CCII Pulley[1] and CCII Patterson referenced his transgender status when falsifying the conviction offense and/or allowing it to remain in plaintiff's records. These allegations sufficiently establish that these defendants acted with discriminatory intent based on plaintiff's status as a transgender individual. Accordingly, plaintiff may, if he chooses, also proceed on an equal protection claim against these defendants.

////

////

---

[1] Plaintiff's allegations indicate that CCII Pulley was also motivated by an "altercation" between him and plaintiff. This mixed motive does not undermine the viability of an equal protection claim. It also does not state a retaliation claim because an "altercation" between an inmate and a staff member does not, without more, amount to protected conduct recognized by the First Amendment. <u>See</u> <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

10

**V.     Conclusion**

Plaintiff's complaint states a cognizable Eighth Amendment failure-to-protect claim and a Fourteenth Amendment equal protection claim against defendants CCII Pulley and CCII Patterson. The remaining claims are not cognizable as pled.

The Court will grant plaintiff the opportunity to file an amended complaint to cure noted defects, to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment).

If plaintiff does not wish to file an amended complaint, and he is agreeable to proceeding only on the claims found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claims. The undersigned will then recommend that his remaining claims be dismissed.

If plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

11

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. The Clerk's Office shall send plaintiff a blank civil rights complaint form;

4. Within thirty days from the date of service of this order, plaintiff must:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claims found to be cognizable in this order; or

   c. Notify the Court in writing that he wishes to stand on his complaint as written; and

5. If plaintiff fails to comply with this order, the undersigned will recommend the action be dismissed for failure to obey a court order and failure to prosecute.

Dated: March 3, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/choy1216.scrn